AUSA: Lauren E. Phillips

| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **25 MAG 1264** |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VINCENT ST. LOUIS,<br><br>Defendant. | **COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 922(a)(3) and 2<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

     Garth Merandy, being duly sworn, deposes and says that he is a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and charges as follows:

### COUNT ONE
### (Unlawful Interstate Transportation of Firearms)

     1.     From at least on or about May 9, 2023 through at least on or about April 16, 2025, in the Southern District of New York and elsewhere, VINCENT ST. LOUIS, the defendant, not being a licensed importer, licensed manufacturer, licensed dealer or licensed collector of firearms within the meaning of Chapter 44, Title 18, United States Code, willfully and knowingly did transport into and receive in the State of New York, where he then resided, firearms purchased and otherwise obtained by the defendant outside the State of New York, to wit, ST. LOUIS purchased firearms in Pennsylvania and transported them to the Bronx, New York, where he resided.

(Title 18, United States Code, Sections 922(a)(3) and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

     2.     I am a Task Force Officer with ATF, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, and my conversations with law enforcement officers, law enforcement employees, and witnesses, as well as my review of documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Background

     3.     Since approximately October 2023, law enforcement has been investigating VINCENT ST. LOUIS, the defendant, for, among other things, unlawfully transporting firearms from Pennsylvania into the Southern District of New York and elsewhere.

4. Based on my involvement in this investigation, my review of ATF records, and my review of records from and conversations with several federal firearm licensees ("FFLs"), I have learned that VINCENT ST. LOUIS, the defendant, has purchased at least approximately 30 firearms in Pennsylvania since in or about 2017. During those purchases, ST. LOUIS represented, in substance and in part, that he resided at several different Pennsylvania addresses, including (1) an address that I know, based on my review of online sources and communication with other law enforcement officers who have traveled to the address, is a UPS store and not a residence (the "UPS Store"), and (2) "Room 4" at a residential address in Pennsylvania (the "Pennsylvania Address"). For the reasons described below, however, I believe that ST. LOUIS currently resides in the Bronx, New York and has resided in the Bronx, New York since at least in or about 2017.

5. As described below, VINCENT ST. LOUIS, the defendant, while residing in the Bronx, New York, has traveled to Pennsylvania to purchase at least two firearms and transported those firearms from Pennsylvania to back to the Bronx, New York.[1]

**Firearm Recovered in May 2023**

6. Based on my involvement in this investigation, including my review of ATF records, I know that on or about December 3, 2022, VINCENT ST. LOUIS, the defendant, purchased approximately three firearms from an FFL in Pennsylvania, including a Ruger model LCP pistol and a Smith & Wesson model SW380 pistol. I know based on my review of records from ATF and the FFL that, in connection with that purchase, ST. LOUIS listed his address as the UPS Store.

7. Based on my involvement in this investigation, including my review of New York City Police Department ("NYPD") records and body camera footage, I know that:

    a. On or about May 9, 2023, two firearms with obliterated serial numbers and ammunition were recovered in an apartment in the Bronx ("Apartment-1") that was being cleaned for renovations

    b. The tenants of Apartment-1 had been given notice to vacate, and on or about May 11, 2023, an individual consistent in appearance with VINCENT ST. LOUIS, the defendant, attempted to enter Apartment-1 but was barred from entering.

---

[1] The investigation has also revealed that law enforcement in Maryland and Grenada have recovered firearms purchased by, or suspected to have been purchased by, VINCENT ST. LOUIS, the defendant. Specifically, according to law enforcement records, a firearm purchased by ST. LOUIS in Pennsylvania in or about July 2022 was recovered (with an obliterated serial number that was later restored) in Maryland on or about February 8, 2024. In addition, according to records from the Caribbean Community Crime Gun Intelligence Unit ("CCGIU"), a firearm purchased by ST. LOUIS in Pennsylvania in or about July 2017 was recovered in Grenada in connection with an arrest by Grenadian Police's Narcotics Unit. Finally, according to records from CCGIU, ST. LOUIS was arrested in possession of a SCCY firearm in Grenada in or about January 2023. While that firearm reportedly has an obliterated serial number, I know from ATF records that ST. LOUIS purchased a SCCY firearm in Pennsylvania in or about December 2022.

c.	That individual told NYPD officers, in sum and substance, that he had been living in the apartment and that he had property inside.

8.	According to NYPD records, the firearms recovered in Apartment-1 were (1) a Ruger model LCP pistol, and (2) a Smith & Wesson model SW380 pistol. NYPD records indicate that the NYPD was able to restore the serial number on the Ruger pistol, and ATF records indicate that the restored serial number for the Ruger pistol matched the serial number for a Ruger pistol purchased by VINCENT ST. LOUIS, the defendant, on or about December 3, 2022.

9.	On or about February 20, 2024, I, along with two other agents, spoke to VINCENT ST. LOUIS, the defendant, at an apartment in the Bronx ("Apartment-2") where, for the reasons stated below, *see infra* ¶ 17, I believe ST. LOUIS lives. During that interview, which was recorded, ST. LOUIS told law enforcement, in substance and in part:

a.	He is from Grenada, where he has a house and store.

b.	He lived in Apartment-1, where the two defaced firearms had been recovered on or about May 9, 2023, with his then-girlfriend. He had traveled to Grenada, and when he returned, he discovered Apartment-1 was locked and his girlfriend had been evicted. He tried to enter Apartment-1 to retrieve his possessions because the police were giving him a "hard time" and not assisting him in retrieving his possessions, but was unsuccessful.

c.	He has purchased and still owns an estimated 8 to 15 firearms.

10.	During the interview, VINCENT ST. LOUIS, the defendant, denied bringing any firearms into New York City and stated that he had never stored any firearms at Apartment-1. However, he also inquired about the current location of the firearms recovered from Apartment-1 and whether they still belonged to him.

**Firearm Recovered in April 2025**

11.	Based on my involvement in this investigation, I know that, in or about June 2024, VINCENT ST. LOUIS, the defendant, drove from New York City to Pennsylvania and purchased several firearms. Specifically, based on my review of Department of Motor Vehicle records and NYPD license plate reader ("LPR") records, I know that a vehicle registered to ST. LOUIS was observed exiting New York City during the early morning hours of June 4, 2024. Based on my involvement in this investigation, I know that on or about June 4, 2024, an ATF officer observed an individual, who I believe to be ST. LOUIS, for the reasons described below, exiting that vehicle outside of an FFL in Pennsylvania. Based on my conversations with that ATF officer, as well as my review of photographs and videos taken by the officer inside the FFL and my review of paperwork submitted to the FFL in the name of ST. LOUIS, I know that ST. LOUIS ordered a Taurus model 85 revolver and a Taurus model G2C pistol from the FFL. ST. LOUIS provided the Pennsylvania Address as his address. Based on my review of LPR records, I know that ST. LOUIS's vehicle was observed during the early morning hours on or about June 5, 2024 traveling Northbound on the George Washington Bridge, *i.e.*, entering New York City, consistent with the vehicle traveling back from Pennsylvania.

3

12. Based on my review of the FBI's National Instant Criminal Background Check System, I know that on or about March 20, 2025, VINCENT ST. LOUIS, the defendant, submitted a background check application to purchase two more firearms in Pennsylvania. Based on my involvement in this investigation, including my review of LPR records and conversations with FFL employees, I know that on or about March 21, 2025, ST. LOUIS's vehicle traveled from New York City to Pennsylvania, and on or about March 23, 2025, an individual who gave his name as VINCENT ST. LOUIS went to an FFL and ordered three firearms. However, that individual left the FFL without the three firearms because his background check was processing. I know based on my review of LPR records that ST. LOUIS's vehicle returned to New York City later that day, on or about March 23, 2025.

13. Based on my review of GPS location data produced pursuant to a judicially authorized search warrant (the "GPS Combo Warrant"), my involvement in physical surveillance of VINCENT ST. LOUIS, the defendant, and conversations with FFL employees, I know that:

    a. At approximately 9 p.m. on or about April 11, 2025, a cellphone that I believe to be used by ST. LOUIS, as described below (the "St. Louis Cellphone"), left New York City and drove in the direction of Pennsylvania.[2]

    b. ST. LOUIS arrived at the FFL in Pennsylvania on or about April 15, 2025, paid for and retrieved two of the three firearms he had ordered, and said, in sum and substance, that he would return for the third firearm.

    c. The St. Louis Cellphone stayed in or near the Pennsylvania Address and moved, consistent with being driven, to several locations in Pennsylvania before returning to New York City, specifically the vicinity of Apartment-2, on or about April 16, 2025.

14. On or about April 16, 2025, after ST. LOUIS returned to New York City, law enforcement officers searched ST. LOUIS's person, vehicle, and premises pursuant to judicially authorized search warrants. Law enforcement recovered a Taurus model 85 revolver from a safe in a bedroom in ST. LOUIS's residence, using a key recovered from ST. LOUIS's vehicle. The serial number on that firearm matched one of the firearms purchased by ST. LOUIS in or about June 2024, as described above.

15. After waiving his *Miranda* rights, VINCENT ST. LOUIS, the defendant, said in a recorded interview with law enforcement that, in sum and substance, he brought from Pennsylvania to New York City the Taurus firearm recovered by law enforcement.

---

[2] According to records from the provider of the St. Louis Cellphone, the St. Louis Cellphone is subscribed in the name of "Vincent St. Louis." In or about February 2024, in connection with law enforcement's interview of VINCENT ST. LOUIS, the defendant, in Apartment-2, ST. LOUIS contacted law enforcement using the St. Louis Cellphone. Finally, I know based on conversations with employees of the FFL that ST. LOUIS has communicated with the FFL via phone and text message using the St. Louis Cellphone.

4

## ST. LOUIS's State of Residence

16. I know based on my review of records from the FFL that VINCENT ST. LOUIS, the defendant, has provided various Pennsylvania addresses in purchasing firearms from the FFL (including the UPS Store), and I know based on my review of records from the Pennsylvania Department of Motor Vehicles that ST. LOUIS has a Pennsylvania license listing the "Room 4" Pennsylvania Address as his residence.

17. However, I believe for the following reasons that VINCENT ST. LOUIS, the defendant, is a resident of New York City and has been since 2017:

    a. Law enforcement database reports list ST. LOUIS's residence as Apartment-2, and ST. LOUIS has provided law enforcement with Apartment-2 as his address on several occasions dating back to in or about October 2001.[3]

    b. Law enforcement interviewed ST. LOUIS at Apartment-2 on or about February 20, 2024 and observed items in Apartment-2 indicating that ST. LOUIS resided there, such as photographs of ST. LOUIS and individuals he told law enforcement were his family members.

    c. Records from three different banks reflect that ST. LOUIS applied for at least four credit cards between in or about 2007 and 2022 using Apartment-2 as his residence.

    d. GPS location data from the Cellphone produced pursuant to the GPS Combo Warrant shows that, on several occasions since at least on or about April 4, 2025, St. Louis's Cellphone has been in the vicinity of Apartment-2 overnight, which is consistent with ST. LOUIS sleeping at Apartment-2.

    e. As described above, *see supra* ¶¶ 11-12, LPR records and records produced pursuant to the GPS Combo Warrant indicate that, on several occasions in or about June 2024, March 2025, and April 2025, ST. LOUIS left New York City to go to Pennsylvania to order and/or

---

[3] For instance, VINCENT ST. LOUIS, the defendant, has filed multiple law enforcement complaints, primarily reporting that he was the victim of theft, and has, on several occasions, reported either Apartment-2 or the building containing Apartment-2 (*i.e.*, the address without the apartment number) as his residential address. Specifically, NYPD records indicate that: in or about October 2001, ST. LOUIS reported the building as his residence; in or about July 2004, he reported the building as his residence; in or about January and April 2017, he reported a Pennsylvania address (which was different from the two addresses discussed above, *see supra* ¶ 4); in or about July 2017, he reported Apartment-2 as his residence; in or about May 2019, he reported a New York address as his residence (this address contains the same street name as Apartment-2 but lists the address as Queens, rather than the Bronx); in or about November 2021, he reported a Pennsylvania address as his residence (which was different than the one reported in 2017 and different from the ones discussed in ¶ 4), although the theft that he reported allegedly occurred on the same street as Apartment-2; and finally, in or about July 2021, he reported the building containing Apartment-2 as his address.

retrieve firearms, before returning to New York City within days or even hours of making those purchases.

    f.  On or about April 16, 2025, ST. LOUIS returned from Pennsylvania to the vicinity of Apartment-2. Law enforcement then searched Apartment-2 pursuant to a judicially authorized search warrant and recovered, among other things, mail addressed to "Vincent St. Louis" at the address for Apartment-2.

### Firearms Licensing

  18.  I have corresponded with an agent from ATF, who searched ATF's Federal Licensing System and confirmed that VINCENT ST. LOUIS, the defendant, is not a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms.

  19.  I have also reviewed correspondence from the Department of Commerce, Bureau of Industry and Security. Those communications indicate that a licensing check was performed, and that no entry was found reflecting the issuance of any firearms license to VINCENT ST. LOUIS, the defendant.

  WHEREFORE, I respectfully request that VINCENT ST. LOUIS, the defendant, be imprisoned or bailed, as the case may be.

_____
TFO Garth Merandy
Task Force Officer
ATF

Sworn to before me this 17th day of April, 2025.

_____
THE HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York

6